UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATALIA CUSHMAN,

      Plaintiff,

v.                                                                                  Case No. 8:19-cv-496-T-60SPF

CITY OF LARGO, et al.,

      Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART "DEFENDANT, BRIAN LIVERNOIS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW"

      This matter is before the Court on "Defendant, Brian Livernois' Motion for Summary Judgment and Incorporated Memorandum of Law" and supporting exhibits, filed on June 30, 2020.   (Docs. 121; 122).   On July 14, 2020, Plaintiff Natalia Cushman filed her response in opposition and supporting exhibits.   (Docs. 124; 125; 126).   Upon review of the motion, response, court file, and record, the Court finds as follows:

### Background[1]

      Plaintiff Natalia Cushman is suing Officer Brian Livernois, in his individual capacity, for alleged constitutional violations and related state law tort claims following her arrest at an L.A. Fitness gym.[2]   At the time of the incident, Cushman

_____

1 The Court construes the facts in light most favorable to the Plaintiff for the purpose of ruling on the motion for summary judgment.
2 The Court notes that Cushman's claims against L.A. Fitness have been stayed pending arbitration.   (Doc. 82).

was approximately sixty years old.   On January 2, 2016, she was at the L.A. Fitness gym located in Largo, Florida.   Cushman was in the sauna with another woman, who was later identified as Liudmila Buell.   Another woman, later identified as Cristal Valdez, entered the sauna dressed in workout clothing and wearing tennis shoes, which is in violation of the sauna rules.   Cushman, feeling that this was unsanitary, left the sauna and went to the front desk to address her concerns.   The front desk employee told Cushman to wait in the women's locker room while a manager was notified.

In the meantime – unbeknownst to Cushman – an altercation had ensued between Buell and Valdez in the sauna.   Valdez alleged that Buell had punched her in the face.   Valdez reported the incident to the front desk, but after she was ignored, she called the Largo Police Department to report the alleged battery.

Officer Livernois was conducting an investigation into this alleged battery. He entered the women's locker room where Cushman was sitting unclothed but wrapped in a sheet.   According to Cushman, she complied with Officer Livernois's order to stand.   When he asked her for her name, Cushman first asked who he was and what he was doing there.   But when Officer Livernois asked for her name a second time, she gave it to him.

Despite her compliance, Officer Livernois decided to arrest her – he grabbed her right hand, twisting it behind her back and handcuffing it.   Then, he pushed her face forcefully into a nearby locker door as he handcuffed her left hand.   He pushed her on the bench and requested that the front desk staff help Cushman put

on her leggings.   Cushman asked to wear her underwear first, and Officer
Livernois responded that if she wanted her underwear, she would be going to jail
naked in her sheet.   He dragged her out of the gym and put her in a police car
while Cushman was wearing only the sheet and no shoes.   Cushman maintains
that Officer Livernois never told her why she was being arrested.

Cushman began to experience difficulty breathing.   After her arrest, she was
taken to Largo Medical Center, where she was diagnosed with a sprained wrist and
contusions related to the force Officer Livernois used during the arrest.

Cushman was charged with resisting arrest with violence.   She spent the
night in jail and had to obtain criminal defense counsel.   The next day, she was
released on bond.   The Pinellas County State Attorney's Office investigated the
case and determined that it did not warrant prosecution.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law."   Fed. R. Civ. P. 56(a).   A properly supported motion for summary
judgment is not defeated by the existence of a factual dispute.   *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 249 (1986).   Only the existence of a genuine issue of
material fact will preclude summary judgment.   *Id.*

The moving party bears the initial burden of showing that there are no
genuine issues of material fact.   *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256,
1260 (11th Cir. 2004).   When the moving party has discharged its burden, the

nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.   *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).   If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.   *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### Count VII – § 1983 Claims

Cushman alleges § 1983 violations against Officer Livernois, including claims based on false arrest and excessive force.   In his motion, Officer Livernois argues that he is entitled to qualified immunity.   Because Officer Livernois was working under the authority of the Pinellas County Sheriff's Office at the time of the incident, Plaintiff must overcome his right to claim qualified immunity.   *See Cornett v. City of Lakeland*, No. 8:06-cv-2386-T-17TBM, 2008 WL 2740328, at *7 (M.D. Fla. July 10, 2008).

"Qualified immunity is an immunity from suit rather than a mere defense to liability."   *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation omitted).   Consequently, it is important to resolve questions of immunity at the "earliest possible stage in litigation."   *Id*. at 231.   As the United States Supreme Court has explained,

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.   Qualified immunity balances

> two important interests – the need to hold public officials accountable
> when they exercise power irresponsibly and the need to shield officials
> from harassment, distraction, and liability when they perform their
> duties reasonably.   The protection of qualified immunity applies
> regardless of whether the government official's error is a mistake of
> law, a mistake of fact, or a mistake based on mixed questions of law
> and fact.

*Id.* (internal quotations and citations omitted).

To overcome a qualified immunity defense, a plaintiff must establish (1) the allegations make out a violation of a constitutional right; and (2) if so, the constitutional right was clearly established at the time of the defendant's alleged misconduct.   *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); *Corbitt*, 929 F.3d at 1311.   However, courts may exercise their discretion when deciding which of the two prongs should be addressed first, depending upon the unique circumstances in each particular case.   *Pearson*, 555 U.S. at 236; *Corbitt*, 929 F.3d at 1311.   In fact, a court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law without resolving the often more difficult question whether the purported right exists at all."   *See Reichle v. Howards*, 566 U.S. 658, 665 (2012).

"For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"   *Corbitt*, 929 F.3d at 1311 (quoting *Anderson*, 483 U.S. at 640). After all, officials are not obligated "to be creative or imaginative in drawing analogies from previously decided cases," and a general "awareness of an abstract right . . . does not equate to knowledge that [an official's] conduct infringes the

right." *Id.* at 1311-12 (quoting *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011)). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Shuford v. Conway*, 666 F. App'x 811, 816-17 (11th Cir. 2016) (quoting *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997)).

<u>§ 1983 False Arrest – Fourth Amendment Violation</u>

Because the Court is considering the qualified immunity issue at this stage of the proceedings, it relies on the well-pleaded facts alleged by Cushman in her fourth amended complaint, and it views all evidence in light most favorable to Cushman. It is important to note that there is no real dispute that Officer Livernois was acting within the scope of his discretionary authority when he arrived at the gym and arrested Cushman. However, viewing the facts in light most favorable to Cushman – as the Court is required to do at the summary judgment stage – her arrest was unprovoked and unlawful.

An officer who makes an arrest without actual probable cause is still entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest. *Brown v. City of Huntville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

It appears to the Court that Officer Livernois had either probable cause or

arguable probable cause to enter the locker room and briefly detain Cushman during his investigation of the battery.   It also appears that he had a valid basis to question Cushman, including asking her to identify herself, during the course of his investigation.   However, under Cushman's version of events detailed in her affidavit and deposition, *she complied with Officer Livernois's orders* – standing up when directed to do so and giving her name the second time that he asked for it. According to Cushman, she did not obstruct Officer Livernois's investigation or resist his orders.   As such, under these facts, there was no probable cause or arguable probable cause to arrest Cushman for resisting arrest without violence.[3] *See* § 843.02, *F.S.* (a person who resists, obstructs, or opposes an officer without offering or doing violence is guilty of a first degree misdemeanor).   The motion for summary judgment is denied as to this ground.

### § 1983 Excessive Force – Fourth Amendment Violation

To the extent that Cushman alleges that Officer Livernois used excessive force against her, the Court finds that Officer Livernois is not entitled to qualified immunity.   The Eleventh Circuit has repeatedly held that "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."   *See Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir.

---

3 The Court notes that if Cushman had declined to cooperate or provide any information to Officer Livernois, or even if she responded with profanity, Officer Livernois would still not have probable cause or arguable probable cause to arrest her for such conduct.   *See Alston v. Swarbrick*, 954 F.3d 1312, 1219 (11th Cir. 2020) (concluding that officer lacked arguable probable cause to arrest individual because it was clearly established at the time of the arrest that mere words could not support probable cause for resisting without violence).

2019) (citing *Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 (11th Cir. 2017)).

Furthermore, in circumstances similar to those alleged here, the Eleventh Circuit

has held that an officer using force against an individual he has no probable cause

or arguable probable cause to arrest is not entitled to qualified immunity as to

excessive force claims when the individual does not pose a danger to the officer or

others.   *See Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998) (affirming

district court's denial of qualified immunity where, under the plaintiff's allegations,

the officer pushed her against a soda machine, handcuffed her, and dragged her to

the police car although there was no evidence in the record to suggest the plaintiff

posed a danger to the officer or others); *Thornton v. City of Macon*, 132 F.3d 1395,

1400 (11th Cir. 1998) (concluding that officers without a warrant or probable cause

"were not justified in using any force, and a reasonable officer thus would have

recognized that the force used was excessive"); *Alexandre v. Ortiz*, 789 F. App'x 169,

176 (11th Cir. 2019) ("Our caselaw is clearly established that the use of gratuitous

force on a non-resisting arrestee would violate the Fourth Amendment.").

In her affidavit and deposition, Cushman contends that Officer Livernois had

no probable cause or arguable probable cause to arrest her and that he used

excessive force by pushing her against a row of lockers to forcibly handcuff her

although she offered no resistance.   At this stage of the proceedings, the Court is

required to draw all inferences in light most favorable to Cushman.   As such, the

Court cannot conclude that Officer Livernois is entitled to qualified immunity as to

Cushman's excessive force claim, and the motion for summary judgment is denied

as to this ground.   *See id.* (denying summary judgment because, under plaintiff's version of events, he was not resisting arrest).

<u>Fourteenth Amendment Claims</u>

Officer Livernois argues that Cushman cannot state a cause of action under the Fourteenth Amendment.   The Court agrees.   Pretrial detainees enjoy the protection afforded by the Due Process Clause of the Fourteenth Amendment, which ensures that no state shall "deprive any person of life, liberty or property, without due process of law."   U.S. Const. amend. XIV.   To the extent that Cushman alleges her Fourteenth Amendment rights were violated during her arrest, the Court finds that she cannot state a claim for relief because she was not a pretrial detainee at the time the arrest occurred.   *See, e.g., C.P. by and through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1091-92 (M.D. Fla. 2015) (dismissing Fourteenth Amendment claim where allegations of excessive force solely related to excessive force used during arrest of the plaintiff).   Consequently, the motion for summary judgment is due to be granted as to this ground.

**Count VI – Battery Against Officer Livernois**

To prevail on a battery claim under Florida law, a plaintiff must establish that the defendant intended to cause harmful or offensive contact with the plaintiff or a third person and that offensive contact directly or indirectly resulted from that conduct.   *See Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1367 (M.D. Fla. 1999).   It is undisputed that Officer Livernois's conduct resulted in harmful contact to Cushman.   Officer Livernois instead relies on statutory immunity to

argue that the Court should grant summary judgment in his favor.

Florida's sovereign immunity statute provides that an officer cannot be held personally liable in tort unless the officer acted in bad faith.   § 768.28(9)(a), *F.S.*; *Ortega v. Schramm*, 922 F.2d 684, 693 (11th Cir. 1991). "Generally, courts are reluctant to strip officers of their immunity under section 768.28(9)(a) of the Florida Statutes."   *See Eiras v. Florida*, 239 F. Supp. 3d 1331, 1344 (M.D. Fla. 2017).   It is not enough to merely allege that a defendant acted maliciously and in bad faith. *Id.* (citing *Brivik v. Law*, 545 F. App'x 804, 807 (11th Cir. 2013)).   In the context of torts such as battery, the term "bad faith" has been equated with actual malice. *See id* ("Courts construing the bad faith prong of section 768.28 use the actual malice standard. . .").

Moreover, "the mere fact that an officer may have acted without probable cause is not enough to pierce the officer's immunity."   *Id.* (citing *Caldwell v. Nocco*, No. 8:14-cv-2167-T-30AEP, 2015 WL 9302835, at *5 (M.D. Fla. Dec. 22, 2015)).   In actuality, "not every arrest lacking probable cause is made in bad faith and Florida's waiver of sovereign immunity clearly contemplates that an agent can commit a wrongful, and even intentional, act and still lack bad faith."   *Id.* (internal quotations omitted).

Cushman does not directly address Officer Livernois's claimed statutory immunity in her response in opposition to the summary judgment motion. Construing her response liberally, it appears that she may believe the lack of probable cause or arguable probable cause establishes malice or bad faith.

However, the absence of probable cause or arguable probable cause is insufficient to deprive an officer of statutory immunity under Florida law.   *See, e.g.*, *id*. ("[U]nder Florida law, the absence of probable cause standing alone will not deprive an officer of immunity under section 768.28."); *Dunn v. City of Boynton Beach, Fla.*, 192 F. Supp. 3d 1310, 1325 (S.D. Fla. June 14, 2016) (allegation that officer acted in absence of lawful authority was insufficient to pierce statutory immunity). Furthermore, Cushman has failed to present any evidence to raise a question of fact as to whether Officer Livernois acted with actual malice – she appears to only rely on a theory of legal malice to support her claims.   *See Alexandre v. Ortiz*, 789 F. App'x 169, 177 (11th Cir. 2019) (concluding that there was not sufficient evidence to raise an issue of fact as to whether the officer acted with malice in effectuating arrest).   Consequently, based on the record, the Court finds that Officer Livernois is entitled to statutory immunity as to Cushman's battery claim under state law. The motion for summary judgment is granted as to Count VI.

### *Count V – Malicious Prosecution*

Under Florida law, the elements of the tort of malicious prosecution are: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original

proceeding." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). A plaintiff's failure to establish any one of these elements is fatal to a malicious prosecution claim. *Eiras v. Baker*, No. 3:16-cv-231-J-34PDB, 2019 WL 423319, at *17 (M.D. Fla. Feb. 4, 2019).

In his motion, Officer Livernois argues that Cushman cannot establish that there was an absence of probable cause or that he possessed the requisite malice. He also argues that he is entitled to statutory immunity under § 768.28(9)(a). The Court agrees that Officer Livernois is entitled to statutory immunity as to the state law malicious prosecution claim.

Cushman generally alleges that Officer Livernois acted with a malicious purpose, and she argues that malice can be legally inferred from his actions in arresting her. When considering whether a plaintiff asserting a malicious prosecution claim has pierced § 768.28(9)(a)'s statutory immunity, "courts are divided as to whether the actual or legal malice standard applies." *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1346 (M.D. Fla. 2017). It appears to the Court that the more appropriate standard here requires a plaintiff to establish actual malice to defeat a claim of statutory immunity. *See Gurrera v. Palm Beach County Sheriff's Office*, 657 F. App'x 886, 892 (11th Cir. 2016) (finding that officers were entitled to immunity in state law malicious prosecution claim where the plaintiff did not plausibly allege actual malice); *Moore v. Seminole County, Fla.*, No. 6:13-cv-224-Orl-31GJK, 2014 WL 4278774, at *6 (M.D. Fla. Aug. 29, 2014) (explaining that although legal malice may be sufficient to prevail on a malicious prosecution claim under

Florida law, it is not sufficient to overcome the statutory immunity conferred by §
768.28(9), *F.S.*).   As such, because Cushman has failed to provide any evidence of
actual malice, the Court finds that Officer Livernois is entitled to statutory
immunity on the malicious prosecution claim.   The motion for summary judgment
is granted as to Count V.

It is therefore

**ORDERED, ADJUDGED,** and **DECREED:**

(1)     "Defendant, Brian Livernois' Motion for Summary Judgment and
        Incorporated Memorandum of Law" (Doc. 121) is hereby **GRANTED IN
        PART** and **DENIED IN PART**.

(2)     The motion is **GRANTED** to the extent that the Court finds that Officer
        Livernois is entitled to summary judgment on Counts VII (Fourteenth
        Amendment claims only), Count VI, and Count V. The Court will enter a
        final judgment once all claims have been resolved.

(3)     The motion is **DENIED** to the extent that the Court finds there are
        genuine issues of material fact as to Count VII (Fourth Amendment false
        arrest and excessive force claims).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>4th</u> day of
September, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**